**EXHIBIT "A"**

Case No. 1:17-cv-01167-RBJ    Document 12-1    filed 08/03/17    USDC Colorado    pg 1 of 15

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:17-cv-01167

Jessica Dawn Irvin,

    Plaintiff,

v.

CK Panang Thai Inc. and
CWC Income Properties 2, LLC,

    Defendants.

_____

# CONSENT DECREE
_____

This Consent Decree (the "Agreement") is made and entered into by and between JESSICA DAWN IRVIN ("Plaintiff") on the one hand, and CK PANANG THAI INC. ("CK") and CWC INCOME PROPERTIES 2, LLC ("CWCIP2") on the other hand (together, CK and CWCIP2 shall be referenced as "Defendants," and Plaintiff and Defendants shall be collectively referenced as the "Parties"). This Agreement is made as a compromise between the Parties for the complete and final settlement of their claims, differences, and causes of action with respect to the dispute described below.

## PREAMBLE

**WHEREAS**, on May 10, 2017, Plaintiff asserted claims for injunctive relief against Defendants, based upon purported violations of Title III of the Americans with Disabilities Act, 42 U.S.C. 12181, *et seq*. ("ADA") and related claims for relief respecting the real property located at or about 1005 S. Public Road, Lafayette, Colorado

1

80026 (the structure situated upon such real property shall be referenced as the "Facility" and the real property such structure is situated upon shall be referenced herein as the "Property"); and

**WHEREAS**, the Parties desire to compromise and fully and finally resolve and settle all actual and potential claims or litigation between them, to avoid the uncertainty, time and expense that would accompany such litigation; and

**WHEREAS**, the Parties have agreed to enter into this Agreement pursuant to which each and every claim and/or cause of action asserted or that could have been asserted by Plaintiff against Defendants shall be fully, forever, and finally released;

**NOW, THEREFORE**, in consideration of the covenants and mutual promises and agreements contained herein, and other valuable consideration, the sufficiency of which is hereby acknowledged, the Parties agree as follows:

**1.** **Attorney's Fees and Costs**

1.1    The Parties shall execute this Agreement and Plaintiff's Counsel, Ehrlich & Schapiro, LLC, shall prepare an Unopposed Motion to Approve Consent Decree and Dismiss with Prejudice ("Unopposed Motion") to be distributed to all Parties for execution. Defendants agree to pay to Plaintiff's Counsel, within fourteen (14) days of the entry by the Court of the Order Approving Consent Decree and Dismissal of Defendants with Prejudice (the "Order"), attorney's fees and costs of litigation in the amount of $5,150.00 (Five Thousand One Hundred Fifty Dollars and No Cents). Said payment shall be made payable to "Ehrlich & Schapiro, LLC IOLTA" and delivered to

Ehrlich & Schapiro, LLC, 1123 Zonolite Road, N.E., Suite 8-B, Atlanta, Georgia 30306.

1.2     Upon delivery to Plaintiff's Counsel of the fully executed Agreement, Plaintiff shall promptly file the Unopposed Motion to Approve Consent Decree and to Dismiss with Prejudice, attaching a copy of the fully executed Agreement and proposed order of dismissal with prejudice.

1.3     Plaintiff agrees to take any and all additional steps required to obtain dismissal of the Action as set forth above. Except as set forth herein, each Party shall be responsible for payment of her or its own litigation expenses, costs and attorneys' fees.

1.4     Plaintiff and Plaintiff's Counsel acknowledge and agree that they are solely and entirely responsible for the payment and discharge of all federal, state, and local taxes, if any, that may, at any time, be found to be due upon or as a result of the Payment hereunder. Plaintiff and Plaintiff's Counsel, and each of them, expressly acknowledge that Defendants have not made any representations regarding the tax consequences of any Payment received pursuant to this Agreement.

1.5     The Parties agree that a condition precedent for the validity of this Agreement is the Court's retaining jurisdiction to enforce the Agreement.

**2.     Alterations or Modifications to the Facilities**

2.1     The Parties hereto acknowledge and stipulate that Defendants shall modify or alter the items expressly identified by and in the manner specified in "Exhibit 1." The repairs or modifications identified in "Exhibit 1" shall be completed in all respects no later than twelve (12) months from the entry of the Order.  The time period for

completion by Defendants shall be subject to acts of God, force majeure, or events beyond the control of Defendants, such as inability to obtain building or zoning permits, failure of the city/county or state inspectors to make inspections, city/county/state work on adjacent roadways/sidewalks which delay implementation of this Agreement, contractor defaults or work stoppages. In the event of such unforeseen circumstances, the time period for completion of the alterations or modifications in "Exhibit 1" shall be extended by the number of days reasonably attributable to such delay-causing event as long as Defendants provide notice to Plaintiff's Counsel prior to the original completion date set forth above.  Either CK or CWCIP2 may provide this notice.

       2.2    Upon completion of the alterations and modifications set forth in "Exhibit 1," Defendants shall provide written notice by certified or registered mail, or via electronic mail, to Plaintiff's Counsel.  Either CK or CWCIP2 may provide this notice.

       2.3    If the modifications or alterations described in "Exhibit 1" conflict with Colorado law, building construction standards, county or city regulations or codes, or any other statute, act, law, rule, regulation, code, standard, or state or local governing body whatsoever, Defendants shall attempt to identify and implement a reasonable alternative solution or variance should a readily achievable one exist.  If any such alternative solution is applied by Defendants, Defendants agree to notify Plaintiff's Counsel of the same prior to initiating any such alternative solution.  It is a material provision of this Agreement that Plaintiff shall approve any alternative solution(s) prior to its (or their) implementation, and further, Plaintiff's approval of any alternative solution(s) proposed by either Defendant shall not be unreasonably withheld.

2.4 The Parties stipulate that after Plaintiff's Counsel receives notice of the completion of the alterations or modifications described in "Exhibit 1" or after the elapse of the twelve (12) month time period set forth in paragraph 2.1 above, whichever is sooner, Plaintiff may inspect the Facility to ensure that Defendants have completed the modifications or alternations described in "Exhibit 1" Defendants shall provide Plaintiff or her designated representative reasonable access to the Facility to verify completion of the work described in "Exhibit 1."

2.5 If an inspection contemplated herein reveals that any of the alterations or modifications described in "Exhibit 1" have been performed in a manner that does not materially comply with "Exhibit 1," Plaintiff shall have the right to enforce this Agreement pursuant to Paragraph 3, below.

2.6 It is agreed by the Parties that upon all of the modifications being completed as set forth in "Exhibit 1," the Facility and Property will be deemed fully compliant with the ADA pursuant to the readily achievable standard.

2.7 Notwithstanding the foregoing or anything to the contrary in this Agreement, "Exhibit 1," or the Unopposed Motion, it shall not be deemed a violation of this Agreement or the Order, or otherwise a violation of the ADA, for CK to maintain only one fully accessible restroom, so long as it is accessible to all genders and clearly marked as such.

**3.     Enforcement Provisions**

If Plaintiff contends that an inspection preformed pursuant to Paragraph 2.4 of this Agreement reveals that any of the alterations and/or modifications described in "Exhibit

1" have been performed in a manner that does not materially comply with "Exhibit 1" Plaintiff shall provide notice to Defendants via certified mail at the address listed in Paragraph 6.1 of this Agreement, below. Defendants shall have one hundred and twenty (120) days after receipt of such notice to cure any alleged non-compliant alterations and modifications. If Defendants do not cure the alleged non-compliant alterations or modifications, Plaintiff shall have the right to enforce this Agreement in an action for specific performance. The prevailing party in any such subsequent action for specific performance shall have her (or its) attorney's fees and costs of litigation incurred in such action paid for by the non-prevailing party.

4. **Compromise**

The Parties agree and acknowledge that this Agreement is the result of a compromise and shall never be construed as an admission of any liability, wrongdoing, or responsibility on the part of the Released Parties (as defined in paragraph 5.1 below). Defendants expressly deny any such liability, wrongdoing, or responsibility.

5. **Release Given By Plaintiff in Favor of Defendants**

5.1   In exchange for the good and valuable consideration set forth herein, Plaintiff and her respective agents, members, successors, assigns, parent entities, subsidiary entities, heirs, officers, predecessors, directors, affiliated persons and/or entities, and anyone claiming by or through them (collectively, the "Releasing Parties"), hereby fully and finally release, acquit, satisfy, and discharge Defendants, and each of their respective agents, predecessors, successors, assigns, heirs, parent entities, subsidiary entities, officers, directors, shareholders, employees, attorneys, affiliated persons or

6

entities, and all current and former tenants or lessees of the Facility (collectively, the "Released Parties"), of and from any and all legal or equitable claims, demands, liabilities, debts, judgments, damages, expenses, actions, or causes of action arising under Title III of the ADA and/or any other federal, state, or local law governing access features and policies for persons with disabilities at public accommodations whether before any federal, state, or local agency, court of law, or in any other forum, and any and all claims that could have been alleged in the Action regarding the Facility. This release also includes all claims for attorney's fees and costs, expert fees and costs, or any other fee or cost incurred to date, with the exception of (a) the attorney's fees and costs set forth in Paragraph 1.1, above, and (b) any attorney's fees and costs resulting from any future action taken by any of the Parties to enforce the terms of this Agreement.

     5.2    As a material inducement for Defendants to enter into this Agreement, Plaintiff represents and warrants that she is not aware of any pending tort, contract, or other legal claims against Defendants, other than the specific claims brought in this Action under Title III of the ADA, which are released under this Agreement.

     5.3    Plaintiff represents and warrants that no portion of any of the matters released by this Agreement and no portion of any recovery or settlement to which they might be entitled have been assigned or transferred to any other person, firm, or corporation not a Party to this Agreement, in any manner, including by way of subrogation or operation of law or otherwise.

**6.**    <u>**Notice**</u>

6.1   Unless otherwise provided in this Agreement or by law, all notices or other communications required or permitted by this Agreement or by law to be served on or delivered to any Party to this Agreement shall be delivered as follows:

To Plaintiff:

Jessica Dawn Irvin
c/o Ehrlich & Schapiro, LLC
1123 Zonolite Road, N.E. Suite 8-B
Atlanta, Georgia 30306
Fax: (855) 415-2480
craig@ehrlichlawoffice.com

To CK:

CK Panang Thai Inc.
c/o Jason Kok, President
1005 S. Public Road
Lafayette, Colorado 80026
Tel: (720) 789-0843
jasonkok82@yahoo.com

To CWCIP2:

Matthew F. Weil, Esq.
11236 El Camino Real, Suite 200
San Diego, California 92130
Tel: (858) 724-6044
mweil@cweil.com

6.2   Any Party may change such address for the purpose of this paragraph by giving timely written notice of such change to the other Parties to this Agreement in the manner provided in this paragraph.

7.   **Free Will**

The Parties acknowledge that each has had an opportunity to consult with counsel of their own choosing concerning the meaning, import, and legal significance of this

Agreement, and that each has done so to the extent desired. In addition, the Parties acknowledge that they each have read this Agreement, as signified by their signatures hereto, and are voluntarily executing the same after having had the opportunity to seek the advice of counsel for the purposes and consideration herein expressed.

**8.     Miscellaneous Terms and Conditions**

8.1     This Agreement contains the complete settlement agreement between the Parties. Any and all prior agreements, representations, negotiations, and understandings between the Parties, oral or written, express or implied, with respect to the subject matter hereof are hereby superseded and merged herein

8.2     This Agreement may be executed in counterparts or by copies transmitted by facsimile or email, all of which shall be given the same force and effect as the original.

8.3     This Agreement may be modified only by a written document signed by all of the Parties. No waiver of this Agreement or of any of the promises, obligations, terms, or conditions hereof shall be valid unless it is written and signed by the Party against whom the waiver is to be enforced.

8.4     This Agreement shall be binding upon the Parties hereto, their predecessors, successors, parents, subsidiaries, affiliates, assigns, agents, directors, attorneys, officers, families, heirs, spouses, and employees.

8.5     If any provision of this Agreement shall be finally determined to be invalid or unenforceable under applicable law by a court of competent jurisdiction, that part shall be ineffective to the extent of such invalidity or unenforceability only, without in any

9

way affecting the remaining parts of said provision or the remaining provisions of this Agreement.

8.6    The Parties acknowledge that they have reviewed this Agreement in its entirety and have had a full opportunity to negotiate its terms, and therefore waive all applicable rules of construction that any provision of this Agreement should be construed against its drafter and agree that all provisions of the Agreement shall be construed as a whole, according to the fair meaning of the language used.

8.7    Plaintiff represents that, other than the Action, she has not filed or authorized the filing of any complaints, charges, or lawsuits against Defendants with any federal, state, or local court, governmental agency, or administrative agency relating to the subject Facilities, and that if, unbeknownst to Plaintiff, such a complaint, charge, or lawsuit has been filed on her behalf, she or it will use her or its best efforts to cause it immediately to be withdrawn and dismissed with prejudice.

8.8    The parties and their Counsel agree to execute any and all further documents and perform any and all further acts reasonably necessary or useful in carrying out the provisions and purposes of this Agreement.

8.9    In any action or other proceeding to enforce rights under this Agreement, the prevailing Party shall recover from the losing party all attorneys' fees, litigation expenses, and costs.

8.10   The Parties acknowledge that all Recitals and/or "WHEREAS" clauses preceding Paragraph 1 are incorporated as a material part of this Agreement.

8.11   This Agreement is entered into in, and shall be governed, construed and interpreted in accordance with the substantive laws of, the State of Colorado.

IN WITNESS WHEREOF, the Parties have executed this agreement as of the date(s) set forth below:

"**Plaintiff**"

_/s/ Jessica Dawn Irvin_
Jessica Dawn Irvin

Date 7/19/17

"**CK**"

_____
CK Panang Thai Inc.
By: Jason Kok
As its: President

Date _____

"**CWCIP2**"

_/s/ Matthew Weil_
CWC Investment Properties 2, LLC
By: CWC Asset Advisors, Inc.
As its: Managing Member
   By: Matthew F. Weil
   As its: Secretary and General Counsel

Date   7/20/17

11

8.11   This Agreement is entered into in, and shall be governed, construed and interpreted in accordance with the substantive laws of, the State of Colorado.

IN WITNESS WHEREOF, the Parties have executed this agreement as of the date(s) set forth below:

"**Plaintiff**"

_____
Jessica Dawn Irvin

Date _____

"**CK**"

_____
CK Panang Thai Inc.
By: Jason Kok
As its: President

Date  7-17-17

"**CWCIP2**"

_____
CWC Investment Properties 2, LLC
By: CWC Asset Advisors, Inc.
As its: Managing Member
    By: Matthew F. Weil
    As its: Secretary and General Counsel

Date _____

11

# EXHIBIT 1

(i) Where applicable, all accessible parking spaces on the Property and their associated adjacent access aisles shall be modified so that they have a slope equal to, or less than, 1:48 (one to forty-eight), in compliance with section 502.4 of the 2010 ADAAG standards.

(ii) All accessible parking spaces on the Property will have adequately marked access aisles adjacent to them, in compliance with section 502.3.3 of the 2010 ADAAG standards.

(iii) The walking surfaces of the accessible ramps on the Property will be modified to have turning space without excessive changes in level, in compliance with section 304.2 of the 2010 ADAAG standards.

(iv) The doorway of the accessible entrance to Unit 179 on the Property will be beveled in compliance with section 404.2.4.4 of the 2010 ADAAG standards.

(v) The interior of the Facility will be modified to provide a clear floor space along the walking surfaces to the restrooms of the Facility that is greater than or equal to 36 (thirty-six) inches of clear width, in compliance with section 403.5.1 of the 2010 ADAAG standards.

(vi) All publically accessible areas of the Property will be modified to have accessible routes with clear widths greater than or equal to the minimum 36 (thirty-six) inch requirement set forth in section 403.5.1 of the 2010 ADAAG standards.

(vii) Restrooms signage that complies with sections 216.8 and 703 of the 2010 ADAAG standards will be installed at the Facility.

1

(viii)  The door leading to the accessible restroom of the Facility will have its operable hardware replaced with door hardware that complies with section 404.2.7 of the 2010 ADAAG standards installed.

(ix)    The commodes in the accessible toilet stalls in the accessible restroom of the Facility will be modified so that the flush control is located on the open side of the accessible stall, in compliance with section 604.6 of the 2010 ADAAG standards.

(x)     The doors to the accessible restroom of the Facility will be modified to provide for minimum clear width and minimum maneuvering clearance in compliance with sections 404.2.3 and 404.2.4 of the 2010 ADAAG standards.

(xi)    The accessible restroom in the Facility will be modified to provide for adequate clear turning space therein, in compliance with sections 304 and 603.2.1 of the 2010 ADAAG standards.

(xii)   The paper towel dispensers in the accessible restroom of the Facility will be relocated within the prescribed vertical reach ranges set forth in section 308.2.1 of the 2010 ADAAG standards.

(xiii)  The mirrors in the accessible restroom of the Facility will be relocated within the permissible ranges set forth in section 603.3 of the 2010 ADAAG standards.